THE MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS v. DAVID RUSSELL, ET AL

5-4919                                                    443 S.W. 2d 536

Opinion Delivered June 9, 1969
[Rehearing denied August 25, 1969.]

*Wright, Lindsey* & *Jennings* for appellant.

*Frank H. Cox* for appellee (Russell).

*Hall, Tucker & Lovell* and *Rose, Meek, House, Barron, Nash & Williamson* for appellee (Nelson).

FRANK HOLT, Justice. The appellee, David Russell, brought this action to recover on a fire insurance policy in the amount of $9,000.00 together with a twelve per-cent penalty and attorney's fee as provided by Ark. Stat. Ann. § 66-3238 (1966 Repl.). The appellee, Herman Nelson, and the Veterans' Administration, were made parties to the action for the purpose of determining their respective interests in the property destroyed by fire. The appellant insurer, the Millers Mutual Fire Insurance Company of Texas, denied coverage in its answer, relying upon the clause in the policy suspending the insurance "while the hazard is increased by any means within the control or knowledge of the insured." The appellant cross-complained against appellee, Nelson, for any amounts which it might be adjudged to pay as a result of the suit on the policy. During the trial, the appellant admitted liability as to the interest of the Veterans' Administration as a mortgagee. The trial court directed a verdict in favor of appellee Russell for the full amount of the policy coverage, including penalties and attorney fees. The trial court refused to direct a verdict in favor of appellant against appellee Nelson for any of the amounts it was liable to pay under the policy. The appellant's claim against appellee Nelson was submitted to the jury which returned a verdict in favor of appellant in the amount of $72.44. This represented an uncollected increase in premium.

For reversal of the judgment, the appellant contends that the lower court erred in failing to direct a verdict for appellant on its cross-complaint against appellee Nelson for the full amount of any judgment rendered against appellant. We do not agree.

When the policy was first issued by the appellant, the building was covered as a "frame, approved roofing, one-family, tenant dwelling." It was owned by appel-

lee Nelson, an independent insurance agent, who had been appellant's agent since 1951. A standard mortgagee clause provided coverage for the Veterans' Administration as a mortgagee. The policy contained the following provision:

"Conditions Suspending or Restricting Insurance. Unless provided in writing adding hereto, this company shall not be liable for loss occurring

(a) While the hazard is increased by any means within the control or knowledge of the insured; ..."

The insured building was used as a residence until it was sold in October, 1966 by appellee Nelson to appellee Russell who used it as a terminal for his trucking company until September, 1967 when it was completely destroyed by fire.

Nelson learned in February 1967 of the change in the use of the building and promptly requested an inspection and rating from the Arkansas Inspection and Rating Bureau in order to determine the premium rate to be applied to the new use of the building. About the same time, Nelson issued an endorsement which amended the name of the insured on the policy to read: "Herman Nelson, Vendor, David Russell, Vendee." This endorsement was sent to the appellant. In March, Nelson received a rating notification from the bureau that the building was classified for insurance rating purposes as "office occupancy, frame, unprotected", which is a risk unacceptable to appellant according to an underwriting guide for its agents.

This classification reflected an increase in the hazard and a corresponding increase in premiums if accepted. The change in rate was approximately six times greater than the rate that was being paid. Upon a routine billing by Nelson's office, this lower annual prem-

ium was paid in April by the Veterans' Administration, the mortgagee. This premium was forwarded by Nelson, less his commission, to the appellant. Nelson never notified appellant of the change in use or occupancy of the building. According to him, this was due to his understanding that appellee Russell was in the process of placing his insurance elsewhere.

The issue of the negligence of appellant's agent, appellee Nelson, was submitted to the jury upon proper instructions and approved by the appellant. The jury found from an interrogatory that Nelson knew, or should have known, that the risk or hazard was increased by appellee Russell's use of the building. In another interrogatory, the jury found that appellee Nelson did not know, nor should have known, that the risk in insuring the property as a truck terminal was a prohibited risk for which appellant would not extend coverage. As stated previously, the jury awarded $72.44 to the appellant for the increase in premium for the added risk.

In determining whether the trial court should direct a verdict, we review the evidence on appeal most favorable to the party against whom the directed verdict is requested. It is not error for the trial court to refuse the request if there is any substantial evidence tending to establish the issue favorable to the party against whom the request is made. *Home Mutual Fire Insurance Company v. Cartmell*, 245 Ark. 44, 430 S.W. 2d 849 (1968); *Barrentine v. The Henry Wrape Company*, 120 Ark. 206, 179 S.W. 328 (1915); *Yahraus v. Continental Oil Company*, 218 Ark. 872; 239 S.W. 2d 594 (1951). In the case at bar, appellee Nelson had been an agent of appellant for approximately seventeen years. He admitted that he determined there was an increase due in the premium rate and that he failed to collect and forward the additional premium for which the jury found him liable. However, other than the testimony of another agent, Nelson's testimony stands practically undisputed that appellant would have accepted the addi-

tional coverage. He testified that he had placed a big portion of his general type business with appellant during his seventeen years as their agent; that from his experience and business practices with appellant it would have accepted an endorsement by him showing a change of occupancy and an increase in premium; that this was the only thing that was not done by him according to the usual business practices with the appellant. In substance, his testimony is largely uncontradicted that, based upon his own experience and business practices with the appellant, if he had endorsed this policy to cover the new classification, and forwarded the additional premium, appellant would have accepted it. We must hold that there was substantial evidence to support the verdict on the issue as submitted to the jury and that the court properly refused to direct a verdict for the appellant.

Appellant next insists that the lower court erred in failing to direct a verdict in favor of appellant and against appellee Russell. Appellant argues that the coverage was suspended as of the time of appellee Russell's change in the use and occupancy of the building because of the undisputed increase in "the hazard" prohibited by the policy. We cannot agree. Appellee Russell, as an insured, paid and appellant received the annual premium on the policy. In *Allemania Fire Ins. Co.* v. *Zweng*, 127 Ark. 141, 191 S.W. 903 (1917), we said:

> "Where an agent does anything within the real or apparent scope of his authority it is as much the act of the principal as if done by the principal himself."

We have consistently followed the general rule that a provision in a fire insurance policy included for the benefit of the insurer can be waived by the insurer through the conduct of its agent acting within the real or apparent scope of his authority. *Capital Fire Ins. Co.*

v. *Montgomery*, 81 Ark. 508, 99 S.W. 687 (1907) and *Queen of Arkansas Ins. Co.* v. *Laster*, 108 Ark. 261, 156 S.W. 848 (1913) [warranty against incumbrances]; *Kansas City Fire & Marine Ins. Co.* v. *Kellum*, 221 Ark. 487, 254 S.W. 2d 50 (1953) [sole ownership clause]; *Farmers Union Mutual Ins. Co.* v. *Hill*, 205 Ark. 139, 167 S.W. 2d 874 (1943); *Washington County Farmers Ins. Co.* v. *Reed*, 218 Ark. 522, 237 S.W. 2d 888 (1951) and *Peoples Indemnity Ins. Co.* v. *Mashburn*, 233 Ark. 575, 345 S.W. 2d 922 (1961) [occupancy clauses].

It is undisputed in the case at bar, that appellant's agent was fully aware of the change in occupancy and the increased hazard in the use of the building by the insured.

Affirmed.

HARRIS, C.J., and BYRD, J., dissent.

CARLETON HARRIS, Chief Justice.    I disagree with the majority insofar as this case relates to Nelson. Though the property occupied by Russell was being used as a truck terminal as early as February, 1967, and though Nelson was familiar with this fact, he did not, at any time before the fire, on September 28, 1967, advise the company by letter, endorsement, new policy, or in any other manner, that the status of the property had changed from residential to commercial.    He admitted that he had a duty as appellant's agent to notify the company of the change of use, and his only defense was to say that the company would have accepted the policy, even though it had been endorsed to cover the new classification.    This evidence is not only speculative, but is also contrary to the evidence offered by appellant.

James Arthur Dunaway, also an agent for appellant, testified that the company furnished an underwriting guide and handbook to its agents, which showed whether a particular company would or would not write insur-

ance on a particular type of risk. The witness said that the risk accepted by Nelson was on the Millers Mutual prohibited risk list.

The result of Nelson's negligence in failing to notify appellant is that Millers Mutual Fire Insurance Company of Texas is liable under a risk that it did not know it held—a risk that it never had the opportunity to refuse. I am of the opinion that the company is entitled to recover from Nelson the full amount of the judgment rendered against it.

I therefore respectfully dissent.

BYRD, J., joins in this dissent.